**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JAMES SWOPE, on behalf of
B.E.S., a minor,**

        **Plaintiff,**

    **vs.**                           Civil Action 2:14-cv-516
                                      Judge Watson
                                      Magistrate Judge King
**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**


<u>**REPORT AND RECOMMENDATION**</u>

**I.    Background**

        This is an action instituted under the provisions of 42 U.S.C. §
405(g) for review of a final decision of the Commissioner of Social
Security denying the application for supplemental security income
filed on behalf of B.E.S., a child under the age of 18.  This matter
is now before the Court on *Plaintiff James Swope's Statement of
Specific Errors on Behalf of BES, a Minor* ("*Statement of Errors*"),
Doc. No. 11, *Defendant's Memorandum in Opposition* ("*Commissioner's
Response*"), Doc. No. 18, and *Plaintiff's Reply*, Doc. No. 19.

        The application for benefits was filed on March 7, 2011, and
alleges that B.E.S. has been disabled since his birth on December 5,
1999.  *PAGEID* 40, 145-50.  The application was denied initially and
upon reconsideration.  An administrative hearing was held on January
29, 2013, at which B.E.S., represented by counsel, appeared and

testified, as did B.E.S.'s mother, Cheryl Swope. *PAGEID* 40, 58. In a decision dated February 6, 2013, the administrative law judge concluded that B.E.S. was not disabled from March 7, 2011, the date the application was filed, through the date of the administrative decision. *PAGEID* 53-54. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on April 18, 2014. *PAGEID* 27-29.

B.E.S. was 11 years of age when his application for benefits was filed, *see PAGEID* 43, 145, and was 13 years of age on the date of the administrative law judge's decision. *See PAGEID* 54, 145. He has not engaged in substantial gainful activity since March 7, 2011, the application date. *PAGEID* 43.

## II.  Administrative Hearing

B.E.S. testified at the administrative hearing that he was doing much better in school than he had during the previous school year. He earned A's and B's in regular classes; his favorite class was science. *PAGEID* 62, 66. He is not as fidgety, and does not jump around in his chair. *PAGEID* 64. He attributed his improved school performance to the fact that he was not being picked on as much and had more friends. *PAGEID* 62. A "safe room" was available to him during the previous school year; he would use it to see a different teacher "[e]very once in a while." *PAGEID* 63. He does his work at school but is sometimes distracted by other children. *PAGEID* 63-64. He has a few friends at school, but does not have friends outside of school. *Id*.

2

B.E.S. testified that he "sometimes yell[s] a little bit" when he is angry. *PAGEID* 66. He gets along "[p]retty good" with his family but occasionally fights with his brothers. *Id.* He is assigned chores, but he does not always remember to do them. *PAGEID* 67. He is able to pick out his own clothes, brush his teeth, and get ready for school by himself, but his parents help him with his breakfast. *PAGEID* 67.

Ms. Swope testified that her son has "[h]uge problems" getting along with others and that he was bullied during the previous school year. *PAGEID* 69. He does not have friends outside school. *PAGEID* 71-72. A person is available at school to assure that he has all his books. *PAGEID* 70. B.E.S. also has an individualized education plan ("IEP") that provides a teacher in a small class setting to help with assignments for one class-period per day. *PAGEID* 70-71. Ms. Swope testified that she has to constantly remind B.E.S. to brush his teeth, get his clothes, and do "all the little things that a 13 year old should be able to do." *PAGEID* 73. Her son is easily distracted and becomes so obsessed with  things like cards, games, and shows that he tunes other people out. *PAGEID* 73-74. Ms. Swope also testified that B.E.S. has tantrums a couple times a day, is controlling of his siblings and friends, and expresses his anger by yelling at people. *PAGEID* 76-78.

## III. Evidence of Record

Leslie A. Leonard, the psychologist at B.E.S.'s school, completed an attention deficit hyperactivity disorder ("ADHD") assessment on

January 7, 2008, *PAGEID* 188-89, and concluded that B.E.S.'s condition was "consistent with an educational diagnosis for Attention Deficit Hyperactivity Disorder: Combined Type." *Id.* Ms. Leonard noted tendencies for inattention, hyperactivity, emotional over-arousal, social problems, aggression, and disorganization. *PAGEID* 189. B.E.S. received all A's and B's from the third through the sixth grades. *PAGEID* 200-01, 243. He was absent from school 18.5 days in the hird grade, six days in the fourth grade, five days in the fifth grade, and 13 days in the sixth grade. *PAGEID* 243.

B.E.S.'s father, the named plaintiff in this action, completed a report of functioning on April 19, 2011. *PAGEID* 202-05. According to plaintiff, B.E.S. cleans his room "50% of the time," doing a "decent" job. *PAGEID* 202. He requires "lots" of supervision because he "[l]oses his train of thought easily." *Id.* He "makes lots of friends" and gets along with them "pretty good," but is controlling and then loses those friends. *Id.* He becomes angry and confrontational easily. *Id.* He has a temper tantrum every couple of days, fights with his siblings, and must be told multiple times to stay on task. *PAGEID* 203.

Irma Johnston, Psy.D., reviewed the record for the state agency on May 31, 2011. *PAGEID* 83-84. According to Dr. Johnston, B.E.S. has less than a marked limitation in attending and completing tasks, in interacting and relating with others, and in caring for himself, and no limitation in acquiring and using information, in moving about and manipulating objects, and in health and physical well-being. *Id.*

4

B.E.S.'s teacher, Marcella Gibbon, completed a teacher questionnaire on April 15, 2011. *PAGEID* 174-83. Ms. Gibbon saw B.E.S. for two to three hours every weekday for eight months. *PAGEID* 174. She reported that plaintiff, whose actual grade level at the time of her report was 5.7, demonstrated a reading grade level of 5.5, a math grad level of 5th grade, and a written language grade level of 5.7. *Id*. Plaintiff was in a class of 25 students with one teacher and did not receive special education services. *Id*. Ms. Gibbon noted that plaintiff's functioning in acquiring and using information appeared to be age-appropriate. *PAGEID* 175. With regard to attending and completing tasks, Ms. Gibbon noted the following: "Student becomes very focused on tasks it is often difficult to pull him away and focus on the next task. [B.E.S.] has trouble moving from center activities to the next one. It usually takes teacher intervention and is disruptive to the class." *PAGEID* 176 [sic]. Ms. Gibbon opined that B.E.S. has a slight or obvious problem in five of 13 areas pertaining to interacting and relating with others and a serious problem in four areas, including making and keeping friends, seeking attention appropriately, expressing anger appropriately, and asking permission appropriately. *PAGEID* 177. She noted that B.E.S. is "easily agitated by certain students and must be grouped selectively to avoid conflict." *Id*. "Group activities many times result in corrective action taken by the teacher for [B.E.S.] to be successful in his group. Taking turns and listening to other students ideas are difficult for him." *PAGEID* 177 [sic]. Ms. Gibbon noted that

5

plaintiff appeared to be functioning appropriately for his age in the areas of moving about and manipulating objects and that he has no chronic or episodic conditions that interfere with his functioning at school. *PAGEID* 178, 180. With regard to his ability to care for himself, Ms. Gibbon noted that B.E.S. receives assistance with handling frustration through a behavior plan that uses a "safe" classroom where he can go to regain composure. *PAGEID* 179. She also noted that B.E.S. picks at sores until they bleed, picks at his fingers and nose, and must be reminded to wash his hands or stop the behavior. *Id*. Ms. Gibbon also noted that B.E.S. had made "great strides with his behavior," but that he "still struggle[d] greatly with socially appropriate behavior." *PAGEID* 181. Ms. Gibbon did not indicate that B.E.S. had a serious problem in any area related to caring for himself. *PAGEID* 179.

Timothy J. McNeish, Ph.D., treated B.E.S. from November 23, 2010, through at least April 18, 2011. *PAGEID* 291. In a medical source statement dated May 13, 2011, Dr. McNeish noted that B.E.S. was anxious, defiant, aggressive at times, argumentative, distractible, demonstrated decreased frustration tolerance and decreased attention, and was easily provoked/agitated. *PAGEID* 292. He specifically noted that B.E.S. was defiant towards his parents and had difficulty relating to others due to decreased frustration tolerance and reactivity. *PAGEID* 293.

Bruce Goldsmith, Ph.D., reviewed the record for the state agency on October 17, 2011. *PAGEID* 90-92. According to Dr. Goldsmith,

6

B.E.S. has less than marked limitation in attending and completing tasks, in interacting and relating with others, and in caring for himself, and has no limitation in acquiring and using information, in moving about and manipulating objects, and in the area of health and physical well-being. *Id.*

Ms. Leonard completed a consultative report on April 9, 2012. *PAGEID* 231-33. According to Ms. Leonard, B.E.S. was being bulled at school, regularly complained about illnesses and asked to leave school early, and had difficulty remaining calm. *PAGEID* 231. His teachers also completed a rating scale for symptoms of Asperger's Disorders, which indicated that B.E.S.'s "behavioral profile is consistent with a diagnosis of Asperger's Disorder." *PAGEID* 232. The results of assessments by B.E.S.'s teachers and parents suggested that he has significant difficulty with the social and executive demands of the school setting. *Id.* On a social skills rating scale completed by plaintiff, B.E.S. was rated below average for social skills and as demonstrating more problem behaviors than average for his grade. *Id.* Ms. Leonard concluded that B.E.S.'s "difficulties to meet the social, motivational, and executive demands of the school setting appear related to Asperger's Disorder/Autism. His social impairment, restricted patterns of interest and inflexible routines are consistent with such a diagnosis." *PAGEID* 233.

Mary Ann Murphy, M.D., treated B.E.S. at Nationwide children's Hospital on at least four occasions between 2009 and 2012. *PAGEID* 299-306; 341-43. Dr. Murphy diagnosed ADHD, anxiety, and Asperger's

Disorder, *PAGEID* 320, and prescribed Risperdal, Celexa, and Metadate, which improved B.E.S.'s ADHD and anxiety and helped control his anger. *PAGEID* 341-43.

Caroline Murphy, Ph.D., saw B.E.S. at Nationwide Children's Hospital Child Development Center in June and July 2012. *PAGEID* 326-40. On July 12, 2012, B.E.S. underwent a psychological assessment to rule out autism spectrum disorder. *PAGEID* 330. He completed the ADOS, WISC-IV, WRAML-2, The Berry VMI, and the WRAT-4, and his parents completed the Vineland II caregiver rating form. *Id*. Dr. Murphy noted that B.E.S. has difficulty interacting with peers, generally engages in one-sided conversations, is ineffective at identifying nonverbal communication in others, and has difficulty understanding the feelings of others. *PAGEID* 338.

Carol A. Bline, Ph.D., completed a psychological evaluation on October 20, 2012. *PAGEID* 309-11. Dr. Bline diagnosed Asperger's Syndrome, ADHD, and an anxiety disorder not otherwise specified. *PAGEID* 311. According to Dr. Bline, B.E.S. would require cooperation with his local school district to ensure that he receives appropriate support for his diagnostic challenges and "proactive measures instituted to decrease his anxiety triggers at school and at home." *Id*. B.E.S. would also benefit from individual and family counseling to improve his coping skills. *Id*. Dr. Bline also completed a childhood disability evaluation form, *PAGEID* 312-17, in which she opined that B.E.S. has marked limitations in acquiring and using information, in attending and completing tasks, and in interacting and

8

relating with others. *PAGEID* 314. He has no limitation in moving about and manipulating objects and has less than marked impairments in caring for himself and in health and physical well-being. *PAGEID* 315. According to Dr. Bline, B.E.S. can acquire and use concrete and straightforward information, but is less likely to be able to apply abstract information. *PAGEID* 314. B.E.S. "has very poor executive functioning skills" and "significant deficits in his ability to attend to directions." *Id.* He has "significant difficulties understanding the nonverbial social cues presented by others" and "has limited insight into his own cues that he sends out to others." *Id.*

Dr. Mary Ann Murphy completed a childhood disability evaluation form on January 14, 2013. *PAGEID* 320-25. According to Dr. Murphy, B.E.S. has marked limitations in acquiring and using information because he "[r]equires supervision and assistance to complete school [and] home routine tasks," *PAGEID* 321, he has marked limitations in attending and completing tasks because he "requires supervision and assistance to complete school [and] home routine tasks," *id.*, he has marked limitations in interacting and relating with others because he "[h]as significant impairment in interactions [with] family members [and] school peers [and] teachers." *Id.* Moreover, B.E.S. has marked limitations in health and physical well-being because he "often requires adult supervision." *PAGEID* 322.

## IV.  **Administrative Decision**

The administrative law judge found that B.E.S.'s severe impairments consist of attention-deficit hyperactivity disorder,

9

anxiety disorder, and Asperger's Disorder. *PAGEID* 43.  The administrative law judge expressly considered Listings 112.02, 112.06, and 112.11 and found that B.E.S.'s impairments, whether considered singly or in combination, neither meet nor medically equal a listed impairment. *PAGEID* 44.  The administrative law judge also found that B.E.S. did not "have an impairment or combination of impairments that result in either 'marked' limitations in two domains of functioning or 'extreme' limitation in one domain of functioning." *PAGEID* 44-53. The administrative law judge specifically found that B.E.S. has less than marked limitation in attending and completing tasks, in interacting and relating with others, and in the ability to care for himself, and no limitation in acquiring and using information, in moving about and manipulating objects, and in health and physical well-being. *Id*.  The administrative law judge therefore concluded that B.E.S. was not disabled within the meaning of the Social Security Act from March 7, 2011, through the date of the administrative decision. *PAGEID* 53-54.

**V.   Standards**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).  Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

A child is disabled under the Social Security Act if he has a medically determinable impairment that results in "marked and severe functional limitations" which meet the 12-month durational requirement of the Act. 42 U.S.C. §1382(a)(3)(C)(i). In determining whether a child's impairments satisfy this standard, the Commissioner's regulations prescribe a 3-step sequential evaluation. 20 C.F.R. §416.924(b)-(d). First, the Commissioner must determine whether the child is engaging in substantial gainful activity. *Id.* If so, the child is not disabled and the Commissioner is not required to further review the claim. *Id.* Second, the Commissioner must determine whether the child has a "severe" impairment, *i.e.,* one that is more

11

than a slight abnormality and causes more than minimal functional limitation. *Id.* If the child does not, the child is not disabled. *Id.* Lastly, the Commissioner must determine if the child has an impairment that meets, medically equals, or functionally equals a listed impairment. *Id.* If so, the child is disabled. *Id.*

For an impairment or combination of impairments to be functionally equivalent to a listed impairment, the child must have "marked" limitations in two functional areas or an "extreme" limitation in one functional area. To make this determination, it is necessary to evaluate the child's abilities in six "domains": (1) the ability to acquire and use information; (2) the ability to attend to and complete tasks; (3) the ability to interact and relate with others; (4) the ability to move about and manipulate objects; (5) the ability to care for oneself; and (6) one's general health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

A "marked" limitation is defined in the regulations, in relevant part, as follows:

> (i)We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. . . .

20 C.F.R. § 416.926a(e)(2)(i).

The regulations define an "extreme limitation," in relevant part, as follows:

> We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean...

20 C.F.R. § 416.926a(e)(3)(i)-(iii).

**VI.    Discussion**

In his *Statement of Errors*, plaintiff argues that the administrative law judge erred in evaluating the medical opinion of B.E.S.'s treating physician, Dr. Mary Ann Murphy.  Plaintiff specifically argues that Dr. Murphy's opinion was entitled to controlling weight and that the administrative law judge improperly rejected the opinion without providing good reasons for doing so. *Statement of Errors*, pp. 11-18.

The opinion of a treating provider must be given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case

13

record." 20 C.F.R. § 416.927(c)(2). Even if the opinion of a treating provider is not entitled to controlling weight, an administrative law judge is nevertheless required to evaluate the opinion by considering such factors as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the extent to which the opinion is supported by the evidence, and the consistency of the opinion with the record as a whole. 20 C.F.R. § 416.927(c)(2)-(6); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Moreover, an administrative law judge must provide "good reasons" for discounting the opinion of a treating provider, *i.e.*, reasons that are "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)). This special treatment afforded the opinions of treating providers recognizes that

> "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Wilson,* 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)).

Dr. Mary Ann Murphy treated B.E.S. on at least four occasions between 2009 and 2012. *PAGEID* 299-306; 341-43. She diagnosed ADHD,

14

anxiety, and Asperger's Disorder, *PAGEID* 320, and prescribed Risperdal, celexa, and Metadate, which improved B.E.S.'s ADHD and anxiety and helped control his anger. *PAGEID* 341-43. Dr. Murphy also completed a childhood disability evaluation form on January 14, 2013, *PAGEID* 320-25, in which she opined that B.E.S. has marked limitations in acquiring and using information because he "[r]equires supervision and assistance to complete school [and] home routine task," *PAGEID* 321, has marked limitations in attending and completing tasks because he "requires supervision and assistance to complete school [and] home routine task," *id.*, and has marked limitations in interacting and relating with others because he "[h]as significant impairment in interactions [with] family members [and] school peers [and] teachers." *Id.* Moreover, B.E.S. has marked limitations in health and physical well-being because he "often requires adult supervision." *PAGEID* 322.

The administrative law judge evaluated this opinion as follows:

> Mary Ann Murphy, M.D., the claimant's psychiatrist, completed an assessment of the claimant's condition and opined that claimant's impairments functionally equal the Listings (Exhibit 5F, p. 3). Specifically, Dr. Bline[1] [sic] concluded that the claimant had marked limitations in acquiring and using information; marked limitations in attending and completing tasks; marked limitations in interaction and relating with others; less than marked limitations in moving about and manipulating objects; less than marked limitations in caring for yourself; and marked limitations in health and physical well-being (Exhibit 4F, pp. 8-9).

---

[1] Plaintiff argues that the administrative law judge failed to discuss any of the limitations opined by Dr. Murphy and he cites, among other things, this reference to "Dr. Bline" to support this argument. *See Statement of Errors*, p. 12; *Plaintiff's Reply*, p. 2. The Commissioner argues that a "commonsense reading of this paragraph, however, supports a finding that the ALJ was actually discussing Dr. Murphy's opinion." *Commissioner's Response*, p. 10 n.1. This Court agrees.

> Dr. Murphy's opinion is given little weight because her opinion is not well-supported and is inconsistent with the record as a whole, particularly the claimant's academic record and report of his teacher, as summarized (Exhibit 5F).

*PAGEID* 46-47.

The administrative law judge did not violate the treating physician rule in evaluating Dr. Mary Ann Murphy's opinion. The administrative law judge explained that he discounted Dr. Mary Ann Murphy's opinion of marked limitations because the opinion was not well supported and was inconsistent with other substantial evidence in the record, particularly B.E.S.'s academic record and the report of his teacher. *PAGEID* 46-47. The administrative law judge also found that Dr. Mary Ann Murphy's opinion was "largely based on the parents' report of symptoms, which are inconsistent with information provided by the claimant's school." *PAGEID* 45. The administrative law judge evaluated each of the six functional domains, discussed B.E.S.'s academic record and the reports of his teachers, and provided specific reasons why B.E.S. has either no or less than marked limitations in each of the six functional domains. *PAGEID* 47-53. These findings are supported by substantial evidence in the record, as cited by the administrative law judge.

Plaintiff contends that Dr. Mary Ann Murphy supported her opinion by indicating that she had access to "various tests administered to BES and his parents, as well as the records from the evaluation of Dr. Caroline Murphy." *Statement of Errors*, p. 14. Dr.

16

Mary Ann Murphy's opinion does not, however, make reference to any
tests or to Dr. Caroline Murphy's treatment notes, nor does it state
that she had access to such information. *See PAGEID* 320-25.  The
portion of the administrative record referred by plaintiff in making
this argument was actually signed by Dr. Caroline Murphy, not by Dr.
Mary Ann Murphy. *See Statement of Errors*, p. 14 (citing *PAGEID* 320).
The administrative law judge found that Dr. Mary Ann Murphy's opinion
was not well supported and was based largely on the report of symptoms
made by B.E.S.'s parents. *PAGIED* 45-47.  This finding is also
supported by substantial evidence.  Notably, Dr. Mary Ann Murphy's
most recent treatment records do not support her opinion of marked
limitations in four functional domains. *See* PAGEID 299-302.

Plaintiff next argues that the administrative law judge erred by
"ignoring all of the medical evidence when evaluating the six domains
of childhood disability." *Statement of Errors*, pp. 20-21 (emphasis
omitted).  Plaintiff specifically argues that the administrative law
judge failed to consider the opinions of Dr. Bline, Dr. Mary Ann
Murphy, and Dr. McNeish when evaluating the six functional domains.
*Id*.  As discussed *supra*, the administrative law judge considered Dr.
Mary Ann Murphy's opinion and found that it was inconsistent with
B.E.S.'s academic record and the report of his teacher. *PAGEID* 46.
The administrative law judge also considered the opinion of Dr. Bline,
but discounted that opinion, in part, for the same reasons. *Id*.  The
administrative law judge then considered B.E.S.'s academic record and
the report of his teacher when evaluating the six functional domains.

17

Plaintiff's arguments to the contrary notwithstanding, the administrative law judge was not required to restate the opinions of Dr. Bline and Dr. Mary Ann Murphy in this context.

The administrative law judge did not discuss Dr. McNeish's opinion when evaluating the functional domains. *PAGEID* 47-53. However, the administrative law judge found that Dr. McNeish's opinion was "largely consistent with the evidence of record," *PAGEID* 47, and Dr. McNeish did not opine that B.E.S. had marked impairments in any functional domain. *PAGEID* 292-93. Under these circumstances, the Court finds no error with the administrative law judge's evaluation of the six functional domains.

Plaintiff next argues that the administrative law judge erred in failing to consider Listing 112.10. *Statement of Errors*, pp. 18-20. Listing 112.10 requires, under appropriate circumstances, a finding of disability based on a child's autistic disorder or other pervasive developmental disorder. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.10. Plaintiff argues that substantial evidence supports a finding that Listing 112.10 has been met and that the administrative law judge erred in failing to consider Listing 112.10. The Commissioner acknowledges that the administrative law judge did not expressly evaluate plaintiff's impairments by reference to Listing 112.10, but argues that any error in connection with that failure was harmless. *Commissioner's Response*, p. 13. This Court agrees.

In determining that B.E.S. does not have an impairment or combination of impairments that meets or medically equals a listed

impairment, the administrative law judge found that B.E.S. does not meet the "paragraph B" criteria of Listings 112.02, 112.06, and 112.11. *PAGEID* 44. Listing 112.10 requires the same "paragraph B" criteria as do Listings 112.02, 112.06, and 112.11. Accordingly, any error arising from the administrative law judge's failure to expressly refer to Listing 112.10 was harmless because the administrative law judge had already determined that B.E.S. does not satisfy the "paragraph B" criteria of the listings. *See Forrest v. Comm'r of Soc. Sec.*, No. 14-5421, 2014 WL 6185309, at *7 (6th Cir. Nov. 17, 2014).

Plaintiff also argues that the administrative law judge erred by relying on the opinions of state agency reviewers Dr. Johnston and Dr. Goldsmith because they did not have access to a substantial portion of the medical evidence, including the opinions of Dr. Bline and Dr. Mary Ann Murphy. *Statement of Errors*, p. 17. Plaintiff's argument in this regard is not well taken.

Social Security Ruling 96-6p provides, in part:

1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review.

2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.

SSR 96-6p, 1996 WL 374180 (July 2, 1996). The Ruling does not require an administrative law judge to reject a state agency medical opinion merely because the claimant continues treatment after the reviewer's

opinion was formed or merely because additional medical records are generated after the reviewer's opinion is rendered. "[T]he regulations provide only that an [administrative law judge] should give more weight to an opinion that is consistent with the record as a whole." *Williamson v. Comm'r of Soc. Sec.*, No. 1:11-cv-828, 2013 WL 121813, at *7 (S.D. Ohio Jan. 9, 2013) (citing 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4)). It is true that an order of remand may be appropriate where an administrative law judge relied on an opinion rendered without the benefit of substantial evidence generated after the date of the opinion. *See, e.g., Ford v. Astrue*, No. 2:11-cv-1139, 2013 WL 372464, at *6 (S.D. Ohio Jan. 30, 2013) *report and recommendation adopted sub nom. Ford v. Colvin*, 2:11-cv-1139, 2013 WL 765654 (S.D. Ohio Feb. 28, 2013)). This is not, however, a case in which the administrative law judge relied solely on the opinion of a state agency reviewing physician. In this case, the administrative law judge had the opportunity to review the entire record and he also credited the reports of Ms. Leonard, the school psychologist who diagnosed Asperger's Disorder, and Ms. Gibbon, the teacher who interacted with B.E.S. on a day-to-day basis and who was familiar with his behavioral and academic limitations. The administrative law judge also noted that Dr. Johnston's and Dr. Goldsmith's opinions of B.E.S.'s functional limitations were consistent with the record as a whole. In short, the administrative law judge did not err in this regard.

Having carefully considered the entire record in this action,

20

the Court concludes that the decision of the Commissioner is supported by substantial evidence. It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See*, *e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir.

21

2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


April 2, 2015                              _____s/Norah McCann King_____
                                               Norah M<sup>c</sup>Cann King
                                          United States Magistrate Judge